UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-3987 DSF (FFMx) | Date | 4/2/2010 |
|---|---|---|---|
| Title | Claire Headley v. Church of Scientology International, et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order GRANTING Defendants' Motion for Partial Summary Judgment (Docket No. 48)

Defendants move for summary judgment on Plaintiff's first cause of action.[1]  For the reasons noted below, the motion is GRANTED.

### I.  FACTUAL BACKGROUND[2]

Plaintiff was raised in the Scientology religion.  (Defs.' Reply Statement of Uncontroverted Facts and Conclusions of Law ("SOUF") ¶ 50.)  At the age of 16, she joined the Sea Org, an organization within the Church of Scientology whose members must make a symbolic commitment to serve for a billion years.  (Id. at ¶¶ 41, 52.)  Sea Org members live communally, eat in common dining areas, are provided basic necessities, and are expected to devote at least two and a half hours a day to religious study.  (Id. at ¶ 44.)  Defendants' staff all belong to the Sea Org.  (Id. at ¶¶ 39, 41.)
   Plaintiff was a Sea Org member from July 1991 to January 2005.  (Id. at ¶ 54.)  During her time in the group, she became a "Class IV auditor."  (Id. at ¶ 56.)  Scientology

---

[1] Plaintiff's first cause of action is a Cal. Bus. & Prof. Code § 17200 claim, and is premised on alleged violations of federal and state labor laws.  (Second Am. Compl. ¶¶ 42-45

[2] The Court relies only on undisputed facts, facts as to which the Court finds the "dispute" to be invalid, and facts as to which the Court denies any evidentiary objections.  Here, most of Plaintiff's "disputes" to Defendants' individual proposed uncontroverted facts are actually objections in disguise, lack merit, and do not create genuine issues of fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

auditing is a one-on-one session between a trained individual called an auditor and a Scientology parishioner.  The auditor, according to Scientology, helps people locate areas of spiritual distress.  (Id. at ¶ 18.)

After joining the Sea Org, Plaintiff worked at the Hollywood Guaranty Building in a management role responsible for obtaining Scientology converts.  (Id. at ¶ 58.)  From 1992 to 1996, Plaintiff worked at Golden Era Productions, an unincorporated division of Defendant Church of Scientology International, Inc. ("CSI"), where she taught classes about Scientology to members and non-members.  (Id. at ¶¶ 32, 60-72.)  CSI is known as the "Mother Church" within Scientology, and its "ecclesiastical authority extends to overseeing the proper administration of all Scientology churches and missions worldwide . . . ." (Id. at ¶ 32.)

After her stint at Golden Era, Plaintiff worked at the Religious Technology Center ("RTC") from 1996 to 2004.[3]  (Id. at ¶ 73.)  In March 1996, she was assigned to train at the Church of Scientology Flag Service Organization ("FSO"), which trains staff from all Scientology organizations about how to promote and spread Scientology.  (Id. at ¶¶ 78-79.)  From March to May 1996, Plaintiff supervised the administration of a program to train supervisors at the FSO for the release of the "Golden Age of Tech," which made many revisions to most Scientology courses.  (Id. at ¶¶ 80-81.)  While at the FSO, she also oversaw a "Flag Metering Course," where students were taught how to use the E-meter, which is used as part of Scientology's auditing process.  (Id. at ¶¶ 20, 83.)

In 1997, Plaintiff returned to the Church of Scientology's International Base in Gilman Hot Springs, California, where she was named Director of the Authorization, Verification, and Correction Division.  (Id. at ¶¶ 84-85.)  She worked in this capacity from February 1997 to March 2000.  (Id. at ¶ 85.)  In this role, she oversaw the correcting of any mistakes in items or products before they left the International Base, and made sure staff members attended their required job training courses.  (Id. at ¶¶ 87-88.)  She also engaged in "cramming," which is a staff correction process developed by Scientology founder L. Ron Hubbard.  (Id. at ¶ 89.)  In March 2000, Plaintiff was put in the role of Internal Exec at RTC, where she served until September 2004.  (Id. at ¶ 90.)  This position required her to exercise quality control over issues and programs at RTC.  (Id. at ¶ 91.)  In September 2004, she was transferred back to the Church of Scientology International, Inc., but she left the church before completing the transition to that new position.  (Id. at ¶ 96.)

---

[3] The RTC "is responsible for insuring the orthodox practice of Scientology and the eternal preservation, transmission and application of all Scientology doctrine and practices contained in [its] Scriptures."  (Defs.' Reply SOUF ¶ 37.)   Both the RTC and CSI are recognized as churches by the I.R.S.  (Id. at ¶ 47.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

## II.  LEGAL STANDARD

Courts may grant summary judgment in a party's favor "upon all *or any part*" of a party's claim. Fed. R. Civ. P. 56(a) (emphasis added).  The standard and procedures for a motion for partial summary judgment are the same as for summary judgment of a claim.  See Delta Sav. Bank v. United States, 265 F.3d 1017, 1021 (9th Cir. 2001).

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  If the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  Id. at 323-24; Fed. R. Civ. P. 56(e).  A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment.  See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no *genuine* issue of *material* fact."  Anderson, 477 U.S. at 247-48.  An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  Anderson, 477 U.S. at 250-51.  "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment.  See Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989).  Moreover, "legal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists."  British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978), cert denied, 440 U.S. 981 (1979).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ."  Anderson, 477 U.S. at 252.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues."  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  Rather, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

### III. DISCUSSION

"The interplay between the First Amendment's Free Exercise and Establishment Clauses creates an exception to an otherwise fully applicable statute if the statute would interfere with a religious organization's employment decisions regarding its ministers." Alcazar v. Corp. of the Catholic Archbishop of Seattle, – F.3d – , 2010 WL 917200, *1 (9th Cir. Mar. 16, 2010) (upholding lower court's decision to grant judgment on the pleadings for defendants).[4] This constitutionally-compelled rule, known as the "ministerial exception," "applies as a matter of law across statutes, both state and federal, that would interfere with the church-minister relationship." Id. at *3. To determine whether an employee is a minister under the ministerial exception, courts in this circuit "use a functional approach . . ., which examines the function of the position rather than relying solely on ordination or 'categorical notions of who is or is not a minister." Id. at *5 (internal quotation marks omitted). In this circuit, a person qualifies as a minister under this exception if she: "(1) is employed by a religious institution; (2) was chosen for the position based largely on religious criteria, and (3) performs some religious duties and responsibilities . . . ." Id. at *6. "This test preserves the functional approach and recognizes that 'ministers' generally perform religious ceremonies and duties." Id. "Additionally, . . . [it] enables a district court to determine who is a 'minister' earlier in the proceedings and minimizes the procedural entanglement of [ ] detailed factual determination[s]." Id.

Here, even if Plaintiff could establish the alleged federal and state labor law violations, there is no dispute that she: (1) was employed by a religious institution; (2) was chosen for her position based largely on religious criteria; and (3) performed religious duties and responsibilities. She worked for Defendants, which both are institutions within the Church of Scientology.[5] She also was able to hold the positions she had with Defendants based largely on religious criteria, namely her commitment to 1,000,000,000 years of service to Scientology and the lifestyle constraints that come with

---

[4] The Ninth Circuit issued Alcazar after Plaintiff's opposition was due, so the Court has reviewed her sur-reply, which discusses Alcazar, as part of its analysis of this motion.

[5] Although Plaintiff contends that CSI and RTC are not religious institutions in her sur-reply, she has not offered any evidence that reasonably calls into question the fact that CSI is considered to be the "Mother Church" within Scientology, or that RTC is responsible for insuring the orthodox practice of the religion. Thus, she has failed to make a showing sufficient to establish a genuine dispute of fact about whether Defendants are religious institutions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

being a member of the Sea Org.  See id. 2010 WL 917200, *6 (deciding this factor was met where plaintiff was in a job available only to seminarians of the Catholic Church). Finally, as part of her duties, she performed various religious duties and responsibilities, most notably "auditing" and "cramming."  For these reasons, the Court finds that the undisputed material facts show that even if Plaintiff could convince a finder of fact that the alleged federal and state labor violations took place, the ministerial exception would apply.  Thus, her first cause of action fails.

### IV.  CONCLUSION

Defendants' motion is GRANTED.

IT IS SO ORDERED.