F:\WP\Cases\9526\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

BARRY VAN SICKLE, ESQ., SBN 98645
1079 SUNRISE AVENUE, SUITE B-315
ROSEVILLE, CA 95661
TELEPHONE: (916) 549-8784
EMAIL: barryvansickle@comcast.net

METZGER LAW GROUP
A PROFESSIONAL LAW CORPORATION
RAPHAEL METZGER, ESQ., SBN 116020
GREGORY A. COOLIDGE, ESQ., SBN 211984
401 E. OCEAN BLVD., SUITE 800
LONG BEACH, CA  90802-4966
TELEPHONE:  (562) 437-4499
TELECOPIER: (562) 436-1561
WEBSITE:  www.toxictorts.com

Attorneys for Plaintiff
CLAIRE HEADLEY

FILED
CLERK, U.S. DISTRICT COURT

JUN 2 3 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CLAIRE HEADLEY,

　　　　　Plaintiff,

　vs.

CHURCH OF SCIENTOLOGY
INTERNATIONAL, a corporate entity,
RELIGIOUS TECHNOLOGY
CENTER, a corporate entity AND
DOES 1-20,

　　　　　Defendants.

CV09-3987 DSF (MANx)

**PLAINTIFF CLAIRE HEADLEY'S THIRD AMENDED COMPLAINT ASSERTING CAUSES OF ACTION FOR:**
**(1)** **FORCED ABORTION IN VIOLATION OF ARTICLE I, SECTION 1 OF THE CALIFORNIA CONSTITUTION;**
**(2)** **FORCED ABORTION IN VIOLATION OF COMMON LAW;**
**(3)** **INVOLUNTARY SERVITUDE;**
**(4)** **FORCED LABOR (HUMAN TRAFFICKING);**
**(5)** **VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200**

**DEMAND FOR JURY TRIAL**

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER AND TOXIC INJURIES

F:\WP\Cases\9528\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 435-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

Plaintiff, Claire Headley, hereby alleges:

## THE PARTIES

1.      Plaintiff, Claire Headley, currently resides in the State of California.

2.      Plaintiff is informed and believes and thereon alleges that Defendant, Church of Scientology International ("CSI"), is a California corporation, which at all material times hereto, was doing business in the County of Los Angeles, State of California.  Indeed, CSI has its principal office and headquarters in Los Angeles, California.  CSI represents itself to be the "Mother Church" of Scientology. In this role, CSI controls lower level organizations, develops and markets promotional materials, and charges for its activities.

3.      Plaintiff is informed and believes and thereon alleges that Defendant, Religious Technology Center ("RTC"), is a California corporation, which at all material times hereto, was doing business in the County of Los Angeles, State of California.  RTC's role in the Scientology enterprise is to police access and use of L. Ron Hubbard's works, which RTC supposedly does by protecting copyrighted material and trademarks.  Whatever the legal propriety of its business operations, RTC is a business.  RTC charges fees for protection of claimed intellectual property rights and is therefore inherently a commercial enterprise. RTC effectively controls CSI and other entities in the Scientology enterprise.   The head of RTC, David Miscavige, is responsible for setting and enforcing the significant business practices of both Defendants, CSI and RTC, including rules against having children, among other rules.

4.      The true names and capacities of Defendants Does 1 through 20 are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will amend this complaint to state the true names and capacities of said fictitious defendants when they have been ascertained.  Plaintiff is informed and believes and thereon alleges that Defendants Does 1 through 10 are in some manner

1

F:\WP\Cases\9520\PLEADOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

responsible for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.  Plaintiff is informed and believes and thereon alleges that Defendants Does 11 through 20 are those potential Defendants who may participate in wrongful retaliation, witness intimidation and fraudulent transfer or concealment of assets to avoid payment of judgment in this case.

5.     Plaintiff is informed and believes and based thereon alleges that, at all times material hereto, each of the Defendants, including the fictitiously named Defendants, was acting in an individual, corporate, partnership, associate, parent-subsidiary, successor-predecessor, conspiratorial or other capacity or as the agent, employee, co-conspirator, and/or alter ego of its co-defendants, and in doing the acts herein alleged, was acting within the course and scope of its authority as such parent, successor, partner, associate, agent, employee, co-conspirator, or alter ego, and with the permission, consent, knowledge, authorization, ratification and direction of its co-defendants, including all fictitiously named defendants.

## GENERAL ALLEGATIONS

6.     From approximately 1991 to 2005, Plaintiff was employed by Defendants, CSI and RTC. During that time, Plaintiff worked and lived at Defendants' facilities located in Los Angeles, California, Gilman Hot Springs, California, and for a brief period of time in Clearwater, Florida.  Nearly all of Plaintiff's work was performed at Defendants' facilities in Gilman Hot Springs, California, which commonly is referred to as "Gold Base."

7.     Plaintiff was sixteen years old when she began working for Defendants and living at their facilities.  Plaintiff continued working for Defendants and living at their facilities for the next fifteen years.

//

//

2

PLAINTIFF CLAIRE HEADLEY'S THIRD AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

F:\WP\Cases\9520\PLEAD\DOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

TELEPHONE (562) 437-4493
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 435-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

8.      Although Plaintiff worked for both Defendants, CSI and RTC, the distinction between these two Defendants is of little or no significance as all employees of these Defendants were and are under the direct control of David Miscavige, whose title is Chairman of the Board of RTC.

9.      During Plaintiff's work for Defendants, Plaintiff worked seven days a week, for approximately 100 to 150 hours per week.  Plaintiff also worked under extreme circumstances, in which Plaintiff's freedom of movement was significantly restricted by Defendants and Plaintiff was under the constant threat of various forms of punishment as detailed in later paragraphs.

10.     At age nineteen, Plaintiff was forced by Defendants to have an abortion. By that time, Plaintiff had witnessed two other employees of CSI refuse to have abortions.  These employees were demoted and ordered to perform heavy manual labor for months.  Plaintiff was concerned about the potential consequences of doing hard labor while pregnant and quite reasonably was reluctant to suffer the punishment of manual labor for being pregnant.  At age nineteen, Plaintiff effectively was stuck at CSI and pregnant.  Plaintiff was dependent upon CSI for support.  Plaintiff had been working for far less than minimum wage, had little money, no place to go and no medical insurance for pregnancy care, delivery, or a new baby.  Plaintiff felt trapped and without viable options.  Plaintiff would have been demoted, fired, or punished if she had the child.  As a result, Plaintiff had an abortion to keep her position at CSI and not risk the adverse consequences of having her baby.

11.     In 1996, Plaintiff was forced by Defendants to undergo her second abortion.  At that time, Plaintiff had been transferred away from her husband and was living and working at Defendants' facilities in Clearwater, Florida.  When Plaintiff discovered that she was pregnant in Florida, Defendants prevented Plaintiff from communicating with her husband, friends, or family about her pregnancy.  Plaintiff was not allowed to contact her husband, Marc Headley, for advice, console, or his input on aborting their baby.  Plaintiff had no money, no insurance, no housing for a baby, no

3

F:\WPCases\9528\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

credit, no high school diploma, and no job prospects except for her employment at RTC. To keep that employment on which she was dependent, Plaintiff was forced to have a second abortion at her expense.

12.     As alleged in detail below, during Plaintiff's employment, Defendants deprived Plaintiff of her rights to privacy and personal liberty and subjected Plaintiff to forced labor (also known as human trafficking).

## TOLLING OF THE STATUTE OF LIMITATIONS
### Delayed Discovery

13.     Plaintiff did not first discover that she had any legal causes of action against Defendants until November or December of 2008, when Plaintiff first consulted an attorney. Shortly before this consultation, Plaintiff was encouraged to meet with an attorney by others who had discovered that they may have claims against Defendants and/or the Scientology enterprise.

14.     Plaintiff could not reasonably have discovered that she had claims against Defendants prior to November or December 2008 because Plaintiff was enmeshed in a long term confidential relationship with Defendants and had been brainwashed by Defendants such that she had no ability to comprehend the wrongfulness of Defendants' conduct in forcing her to have abortions or forcing her to perform work against her will. The confidential relationship that existed between Plaintiff and Defendants, as well as the brainwashing to which Plaintiff was subjected, are demonstrated by the following:

(A)     From a very young age, Plaintiff was pressured into signing an employment contract with the Scientology enterprise. This pressure started when Plaintiff was a mere nine years old, and persisted until Plaintiff signed a "Contract of Employment" with the Scientology enterprise at age sixteen. During Defendants' recruitment of Plaintiff, Plaintiff was led to believe that her life at Defendants' facilities would remain relatively normal - specifically, Defendants represented to Plaintiff that

4

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

she would complete her education, that she would be permitted to take three weeks of vacation each year, and that she would see her family every week.  Based on these representations, Plaintiff stopped her schooling at age sixteen and began living and working at Defendants' facilities full time.

(B)   From the time that Plaintiff began working for Defendants full time as a minor, Plaintiff was restricted almost entirely to Defendants' facilities.  If Plaintiff wanted to leave Defendants' facilities for any reason whatsoever, she was required to submit a formal request and obtain written authorization from at least three different people before she was allowed to leave.  Additionally, if Plaintiff wanted to leave Defendants' facilities for more than a few hours, she was required to undergo a security check, also known as a "sec check."  During sec checks, Plaintiff was interrogated by Defendants and questioned at length about her intentions for leaving and her plans while away from Defendants' facilities, including questions regarding whether Plaintiff intended to say anything negative about Scientology.  Plaintiff also observed that many of her co-workers only were allowed to leave Defendants' facilities with security "escorts" when these individuals were "perceived" to be security risks (i.e., individuals who may never come back or who may speak negatively of their experiences).

(C)   Defendants' facilities in Gilman Hot Springs, California, where Plaintiff spent the bulk of her time working for Defendants, were encircled with a razor-wire topped fence that had sharp inward pointing spikes to prevent escape.  The gates at this location were guarded at all times, preventing Plaintiff and her co-workers from freely coming and going.  Security also was present at Plaintiff's living quarters, further preventing Plaintiff and her co-workers from freely coming and going.

(D)   From the time that Plaintiff was a minor, Plaintiff's important personal documents were kept under lock and key by Defendants and Plaintiff was not allowed to keep these documents on her person or at her living quarters.  This included Plaintiff's birth certificate, passport, and her marriage certificate.

5

PLAINTIFF CLAIRE HEADLEY'S THIRD AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\9528\PLEADDOC\COMPLAINT\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

(E)     From the time that Plaintiff was a minor, Plaintiff observed that others who attempted to permanently leave Defendants' facilities were tracked down and brought back to Defendants' facilities.  Thereafter, they were placed under lock and key with full-time security for lengthy periods of time, required to perform heavy manual labor, interrogated, and stripped of other rights.

(F)     Within months of starting to work for Defendants as a minor, Plaintiff rarely was allowed to see her family.  Indeed, over the course of her fifteen years of employment, Plaintiff almost never was allowed to leave Defendants' facilities for any reason.

(G)     From the time that Plaintiff was a minor, Defendants also severely restricted Plaintiff's lines of communication with and understanding of the outside world.  Plaintiff had no access to the internet, email, or uncensored mail.  Likewise, to make a personal phone call, Plaintiff was required to have written authorization from at least two different people and had to specify who she wanted to call and why.  Her phone calls then were monitored.  Plaintiff's co-workers were subjected to these same procedures.

(H)     Plaintiff had little education or sophistication.  Indeed, other than a brief, three week period in 1992, Plaintiff never received any formal education at Defendants' facilities, and never was given the opportunity to obtain her high school diploma or equivalent degree, even though Defendants represented that Plaintiff would be provided with such before Plaintiff signed her contract of employment as a minor.

(I)     From the time that Plaintiff was a minor, Plaintiff was entirely dependent on Defendants for her sustenance, shelter, and income, and was required to work a rigid work schedule, working seven days a week, for 100 or more hours per week.

(J)     From the time that Plaintiff was a minor, Plaintiff routinely and consistently was deprived of her sleep and required to stay up for days on end.  Plaintiff frequently was prohibited from returning to her living quarters and was

6

PLAINTIFF CLAIRE HEADLEY'S THIRD AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

required to sleep at her desk or on her office floor.

(K)     From the time that Plaintiff was a minor, Defendants threatened Plaintiff with loss of food privileges. Indeed, Plaintiff was subjected to food deprivation for lengthy periods of time during her employment, which resulted in significant weight loss and emaciation.

(L)     From the time that Plaintiff was a minor, Defendants required Plaintiff to submit to interrogations on a primitive lie detector type device called an "e-meter." These interrogations were used to gather and document confidential and embarrassing information, and to wear Plaintiff's resistance down by hours of repetitive and intrusive questioning.  Plaintiff was subjected to interrogations on numerous occasions during her employment with Defendants.

(M)     From the time that Plaintiff was a minor (even before Plaintiff began working full time for Defendants), Defendants forbade Plaintiff from reading or thinking anything negative about Scientology. This was enforced through the isolation tactics detailed above, as well as through the constant threat of sec checks (in which Plaintiff would be interrogated about her negative thoughts) and other forms of punishment, such as heavy manual labor or disconnection from family members. Defendants effectively molded Plaintiff's world view as Plaintiff was under their direct and singular control for the majority of her formative years (age sixteen to thirty-one) and was restricted to the world presented by Defendants.

(N)     From the time that Plaintiff was a minor, Defendants led Plaintiff to believe that she had few rights, if any, and that the rights and powers of Defendants' upper management were virtually unlimited.

(O)     From the time that Plaintiff was a minor and throughout her fifteen years of employment, Plaintiff was intimidated by the constant threat of hard labor, sleep deprivation, confinement, physical restraint, lack of food, and isolation from her husband. Plaintiff also feared that she would be permanently "disconnected" from her family and friends and never allowed to speak with or see any of them again

7

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\9526\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL
DISEASE, CANCER, AND TOXIC INJURIES

if she did not follow Defendants' orders and procedures. Plaintiff further feared being subject to a significant "Freeloader Debt" if she did not remain working for Defendants. In fact, Plaintiff has been "disconnected" from her family since leaving Defendants' facilities in 2005 and was given a bill from Defendants for her supposed "Freeloader Debt" in the amount of $96,580.00.

15. The first thirty-one years of Plaintiff's life were molded by the Scientology enterprise, and principally by Defendants. During Plaintiff's fifteen years of work, which started when Plaintiff was still a minor, Plaintiff had no alternatives with which to compare her living and working conditions or Defendants' conduct. Instead, Defendants created and molded Plaintiff's sense of reality, which remained ingrained in Plaintiff well after she left Defendants' facilities in 2005. Prior to November or December 2008, Plaintiff reasonably could not have discovered that she had claims against Defendants because she simply could not reasonably comprehend the wrongfulness of Defendants' conduct.

### Equitable Estoppel

16. Not only was Plaintiff incapable of comprehending the wrongfulness of Defendants' conduct prior to November or December of 2008, Plaintiff actually and reasonably was induced to forbear filing suit against Defendants within some of the applicable limitations periods as a result of Defendants' conduct and intimidating acts.

17. First, Plaintiff actually and reasonably believed that she could not file suit against Defendants because Defendants required Plaintiff to sign a number of waivers and releases during her employment. Defendants represented to Plaintiff that by signing these documents, Plaintiff released any and all claims she had against Defendants, that these documents required Plaintiff to keep certain information "confidential," and that if Plaintiff did not keep this information "confidential," she would be subject to paying significant penalties/fines and may be sued by Defendants. Defendants knew at the time that Plaintiff signed these documents that they were unenforceable and contrary to law. However, Defendants regularly use these types of

8

F:\WP\Cases\8526\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

forms and documents to scare and intimidate their employees into believing that they have no legal rights against Defendants, and intended that Plaintiff would rely on these documents in that fashion. Plaintiff, to her detriment, reasonably believed that she did not have any legal rights or claims against Defendants because of the documents that she signed and because of Defendants' representations with respect to said documents.

18.    Second, as a result of the intimidating acts detailed above in Paragraph 14, Defendants caused Plaintiff to believe that she had few rights, if any, and that the rights and powers of Defendants' upper management were virtually unlimited. Plaintiff refers to the allegations in Paragraph 14, sub-paragraphs (A) through (O), and incorporates said allegations hereat as though set forth in full. Defendants' repeated and continual intimidation of Plaintiff over the course of her fifteen years of employment as detailed above, actually and reasonably induced Plaintiff to forbear filing suit within some of the applicable limitations periods.

19.    Third, Defendants engaged in additional intimidating acts after Plaintiff left Defendants' facilities which actually and reasonably caused Plaintiff to forbear filing suit against Defendants during some of the applicable limitations periods. Specifically, Defendants' agents followed Plaintiff to a bus station in Las Vegas, Nevada, shortly after she escaped from Defendants' facilities. At this bus station, Defendants' agents attempted to coerce Plaintiff to return to Defendants' facilities by making multiple threats to Plaintiff. Additionally, Defendants sent Plaintiff a bill for her supposed "Freeloader Debt" in the amount of $96,580.00. Defendants also sent an investigator to Plaintiff's home early in the morning while Plaintiff was home alone with her two children; this investigator attempted to question Plaintiff about her husband's supposed involvement with a group called "Anonymous." Defendants also sent private investigators to Plaintiff and her husband's place of business, where these investigators handed out fliers to employees containing slanderous information regarding Plaintiff's husband. Defendants' agents also contacted friends of Plaintiff and of Plaintiff's husband attempting to slander Plaintiff and her husband as well as

9

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\9526\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

gather information that could be used for blackmail to prevent Plaintiff and her husband from speaking negatively about Scientology.

20.     Moreover, Plaintiff is informed and believes that Defendants have gone on a mission to silence witnesses and potential plaintiffs, and that Defendants have used threats, intimidations, coercion and promises of forgiving alleged debt for purposes of silencing witness and former employees who experienced similar working conditions while previously employed by Defendants or a similar Scientology organization.

## FIRST CAUSE OF ACTION

### FOR FORCED ABORTION IN VIOLATION OF PLAINTIFF'S RIGHT OF PRIVACY UNDER ARTICLE I, SECTION 1 OF THE CALIFORNIA CONSTITUTION

(By Plaintiff, Claire Headley,

Against All Named Defendants and Does 1-10)

21.     Plaintiff refers to paragraphs 1 through 20 and, by this reference, incorporates said paragraphs hereat as though set forth in full.

22.     During Plaintiff's employment with Defendants, she became pregnant on two occasions in approximately 1994 and 1996.  Plaintiff was nineteen years old at the time she became pregnant in 1994, and twenty-one years old when she became pregnant in 1996.

23.     Defendants forced Plaintiff to have abortions on both of these occasions by threatening Plaintiff with being placed on heavy manual labor and subjected to extensive interrogation during her pregnancy.  Plaintiff further was led to believe that if she continued her pregnancy, she would risk losing her job, her housing, and her husband.  Plaintiff observed that other workers who became pregnant and did not immediately undergo abortions were restricted to Defendants' facilities and not allowed to return to their sleeping quarters, were placed under full-time security watch,

10

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

were required to perform heavy manual labor such as digging ditches, and were not allowed to talk to other staff members, spouses included. At the time of Plaintiff's first pregnancy, Plaintiff only was permitted to speak to her husband briefly regarding the fact that she was required to undergo an abortion. During Plaintiff's second pregnancy, Defendants prohibited and prevented Plaintiff from speaking to her husband all together.

24.     At all material times hereto, Defendants have had an internal policy of coercing and forcing their female employees, including Plaintiff, to have abortions, so as to maximize the workload from female employees and to avoid child care issues.

25.     During her fifteen years at Defendants' facilities (from age sixteen to age thirty-one), Plaintiff's female co-workers regularly were ordered by Defendants to have abortions, and Plaintiff believed these abortions and Defendants' ordering of these abortions were standard protocol.

26.     As a direct and proximate result of Defendants' coercion and threats, Plaintiff had abortions in approximately 1994 and 1996.

27.     Plaintiff had a reasonable expectation of privacy in deciding whether to continue her pregnancies or to have abortions.  A woman's right of privacy in deciding whether or not to bear children is one of the most intimate and fundamental of all constitutional rights because it flows from a well-established right of privacy in matters related to marriage, family, and sex, as repeatedly acknowledged by the U.S. Supreme Court and other courts of this State.

28.     Defendants invaded Plaintiff's right of privacy in deciding whether to continue her pregnancies or to have abortions by forcing Plaintiff to have abortions or risk being subjected to heavy manual labor and extensive interrogation, losing her job and housing, and risking never seeing her husband again.

29.     Defendants' conduct in forcing Plaintiff to have abortions was a serious invasion of Plaintiff's privacy because it stripped Plaintiff of one of the most intimate and fundamental of all constitutional rights, which is a woman's right to

11

F:\WP\Cases\9328\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

privacy in deciding whether or not to bear children.  It is well-established that this right of personal choice is central to a woman's control not only of her own body, but also to the control of her social role and personal destiny.  Particularly in the workplace, a woman has a heightened right of privacy in deciding whether or not to bear children.

30.     As a direct and proximate result of Defendants' conduct in forcing Plaintiff to have abortions, Plaintiff suffers from severe emotional distress, including anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, and anguish.

31.     Defendants' conduct in forcing Plaintiff to have abortions was a substantial factor in causing Plaintiff's severe emotional distress.

32.     Plaintiff seeks damages for her emotional distress in a sum to be established according to proof.  Further, Plaintiff seeks an injunction preventing Defendants from continuing to force female employees to have abortions in violation of their right to privacy and reasonable attorney's fees according to proof.  This claim is made for the public good and to discourage this outrageous conduct from continuing in the future.

## SECOND CAUSE OF ACTION
### FOR FORCED ABORTION IN VIOLATION OF PLAINTIFF'S
### RIGHT OF PRIVACY UNDER CALIFORNIA COMMON LAW
(By Plaintiff, Claire Headley,

Against All Named Defendants and Does 1-10)

33.     Plaintiff refers to paragraphs 1 through 32 and, by this reference, incorporates said paragraphs hereat as though set forth in full.

34.     During Plaintiff's employment with Defendants, she became pregnant on two occasions in approximately 1994 and 1996.  Plaintiff was nineteen years old at the time she became pregnant in 1994, and twenty-one years old when she became pregnant in 1996.

12

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\9526\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

35.     Defendants forced Plaintiff to have abortions on both of these occasions by threatening Plaintiff with being placed on heavy manual labor and subjected to extensive interrogation during her pregnancy.  Plaintiff further was led to believe that if she continued her pregnancy, she would risk losing her job, her housing, and her husband.  Plaintiff observed that other workers who became pregnant and did not immediately undergo abortions were restricted to Defendants' facilities and not allowed to return to their sleeping quarters, were placed under full-time security watch, were required to perform heavy manual labor such as digging ditches, and were not allowed to talk to other staff members, spouses included.  At the time of Plaintiff's first pregnancy, Plaintiff only was permitted to speak to her husband briefly regarding the fact that she was required to undergo an abortion.  During Plaintiff's second pregnancy, Defendants prohibited and prevented Plaintiff from speaking to her husband all together.

36.     At all material times hereto, Defendants have had an internal policy of coercing and forcing their female employees, including Plaintiff, to have abortions, so as to maximize the workload from female employees and to avoid child care issues.

37.     During her fifteen years at Defendants' facilities (from age sixteen to age thirty-one), Plaintiff's female co-workers regularly were ordered by Defendants to have abortions, and Plaintiff believed these abortions and Defendants' ordering of these abortions were standard protocol.

38.     As a direct and proximate result of Defendants' coercion and threats, Plaintiff had abortions in approximately 1994 and 1996.

39.     Plaintiff had a reasonable expectation of privacy in deciding whether to continue her pregnancies or to have abortions.  A woman's right of privacy in deciding whether or not to bear children is one of the most intimate and fundamental of all rights because it flows from a well-established right of privacy in matters related to marriage, family, and sex, as repeatedly acknowledged by the U.S. Supreme Court and other courts of this State.

13

PLAINTIFF CLAIRE HEADLEY'S THIRD AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

F:\WP\Cases\6528\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

40.    Defendants intentionally intruded into Plaintiff's private affairs and concerns in deciding whether to continue her pregnancies or to have abortions by ordering Plaintiff to have abortions or risk being subjected to heavy manual labor and interrogation, risk losing her job and housing, and risk losing her husband.

41.    Defendants' intrusion into Plaintiff's private decision of whether to continue her pregnancies or to have abortions would be highly offensive to a reasonable person. A woman's right of privacy in deciding whether or not to bear children is one of the most intimate and fundamental of all privacy rights; this right is central to a woman's control not only of her own body, but also to the control of her social role and personal destiny. Further, in the workplace, there is a heightened sense and expectation of privacy as to matters concerning family and sex.

42.    As a direct and proximate result of Defendants' conduct in forcing Plaintiff to have abortions, Plaintiff suffers from severe emotional distress, including anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, and anguish.

43.    Defendants' conduct in forcing Plaintiff to have abortions was a substantial factor in causing Plaintiff's severe emotional distress.

44.    Plaintiff seeks damages for her emotional distress in a sum to be established according to proof. Further, Plaintiff seeks an injunction preventing Defendants from continuing to force female employees to have abortions in violation of their right to privacy and reasonable attorney's fees according to proof. This claim is made for the public good and to discourage this outrageous conduct from continuing in the future.

//

//

//

//

//

14

PLAINTIFF CLAIRE HEADLEY'S THIRD AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

F:\WP\Cases\9526\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

### THIRD CAUSE OF ACTION

#### FOR INVOLUNTARY SERVITUDE IN VIOLATION OF THE THIRTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1 AND 6 OF THE CALIFORNIA CONSTITUTION

(By Plaintiff, Claire Headley,

Against All Named Defendants and Does 1-10)

45.     Plaintiff refers to paragraphs 1 through 44 and, by this reference, incorporates said paragraphs hereat as though set forth in full.

46.     From approximately 1991 to 2005, Plaintiff was forced to perform work for Defendants against her will.

47.     Defendants compelled Plaintiff to perform work against her will through the use of and threats of physical restraint. Specifically, Defendants engaged in the following conduct that compelled Plaintiff to believe she had no alternatives but to perform the labor commanded of her by Defendants:

(A)     Plaintiff was restricted almost entirely to Defendants' facilities. If Plaintiff wanted to leave Defendants' facilities for any reason whatsoever, she was required to submit a formal request and obtain written authorization from at least three different people before she was allowed to leave. Additionally, if Plaintiff wanted to leave Defendants' facilities for more than a few hours, she was required to undergo a security check, also known as a "sec check." During sec checks, Plaintiff was interrogated by Defendants and questioned at length about her intentions for leaving and her plans while away from Defendants' facilities. Plaintiff observed that many of her co-workers only were allowed to leave Defendants' facilities with security "escorts" when these individuals were "perceived" to be security risks (i.e., individuals who may never come back or who may speak negatively of their experiences). Over the course of her fifteen years of work for Defendants, Plaintiff almost never was allowed to leave Defendants' facilities for any reason.

//

15

F:\WP\Cases\9526\PLEAD\DOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

(B) Defendants' property in Gilman Hot Springs, California, where Plaintiff spent the bulk of her time working for Defendants, was encircled with a razor-wire topped fence that had sharp inward pointing spikes to prevent escape, was equipped with motion sensors throughout the property, and had other surveillance posts around the perimeter. The gates at this property were guarded at all times, preventing Plaintiff and her coworkers from freely coming and going. Security also was present at Plaintiff's living quarters, further preventing Plaintiff and her coworkers from freely coming and going. Plaintiff and her coworkers also were required to check-in for "musters" several times a day, during which Defendants accounted for their presence.

(C) Plaintiff's important personal documents were kept under lock and key by Defendants and Plaintiff was not allowed to keep these documents on her person or at her living quarters. This included Plaintiff's birth certificate, passport, and her marriage certificate.

(D) Plaintiff observed that others who attempted to permanently leave Defendants' facilities were tracked down and brought back to Defendants' facilities. Defendants used "blow drills" to locate escaped workers, whereby a significant number of individuals were assigned to track down escaped workers through various methods, including physically following and searching for escaped workers, tracking the workers' calls to relatives, and tracking phone records and bank and credit accounts. Plaintiff also was aware that many of the workers who attempted to escape Defendants' facilities were physically restrained and assaulted. Once escaped workers were located and returned to Defendants' property, these workers were placed under lock and key with full-time security for lengthy periods of time, required to perform heavy manual labor, interrogated, and stripped of other basic rights.

(E) Defendants also routinely threatened Plaintiff and her coworkers with being sent to the Rehabilitation Project Force ("RPF"). Workers assigned to the RPF are subjected to a brutal regimen of manual labor and have no freedom of movement. Working conditions on the RPF are so horrible that its mere

16

PLAINTIFF CLAIRE HEADLEY'S THIRD AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\9526\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

existence serves as a deterrent and intimidates workers, such as Plaintiff, into a state of fear and compliance vis-à-vis to Defendants. The RPF can be arguably more severe in punishment and violations of personal liberties than solitary confinement in prison.

(F)     Defendants also severely restricted Plaintiff's lines of communication to the outside world. Plaintiff had no access to the internet, email, or uncensored mail. Likewise, to make a personal phone call, Plaintiff was required to have written authorization from at least two different people and had to specify who she wanted to call and why. Her phone calls then were monitored. As a result, Plaintiff was prevented from phoning or emailing for help.

(G)     Plaintiff and her coworkers also were forbidden from calling 911 as Defendants deemed calling 911 to be a "high" crime. Plaintiff feared that if she called 911, she would lose any and all contact with her family, would be placed on heavy manual labor, would be ostracized from others on Defendants' property, would have no access to phone lines for a year or more, and would not be allowed to leave Defendants' property without a full-time security escort. Additionally, based on Defendants' representations regarding their security system, Plaintiff did not believe that the police would get past the security gate at Defendants' property even if she called 911.

(H)     Plaintiff also was forbidden from informing her family where Defendants' facilities in Gilman Hot Springs, California, were located. The location of these facilities were intentionally kept a secret from public Scientologists for years.

(I)     Defendants also required Plaintiff to submit to interrogations on a primitive lie detector type device called an "e-meter." These interrogations were used to gather and document confidential and embarrassing information, and to wear Plaintiff's resistance down by hours of repetitive and intrusive questioning. Plaintiff was subjected to interrogations on numerous occasions during her employment with Defendants.

//

17

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\0528\PLEAD\DOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

(J)     Throughout Plaintiff's fifteen years of work, Defendants intimidated Plaintiff with the constant threat of hard labor, sleep deprivation, confinement, physical restraint, lack of food, isolation from her husband, and being permanently "disconnected" from her family and friends if Plaintiff failed to comply with Defendants' orders.  Indeed, on numerous occasions when Plaintiff purportedly failed to meet Defendants' standards, she actually was subjected to heavy labor, deprived of her sleep, prevented from returning to her living quarters, isolated from her husband, and subjected to food deprivation.

48.     Defendants also compelled Plaintiff to perform work against her will through the use of economic coercion and threats of debt collection.  Specifically, Defendants routinely reminded Plaintiff and her coworkers that Defendants charge a "Freeloader Debt" to employees who "breach" their purported employment contract by quitting their jobs and leaving Defendants' facilities.   Defendants threatened employees, including Plaintiff, with substantial sums of money, frequently in the $100,000 range.  Indeed, at the conclusion of Plaintiff's employment with Defendants, the Scientology enterprise asserted a "Freeloader Debt" against Plaintiff in the amount of $96,580.00.  This threat was significant and extremely intimidating to Plaintiff who began working for Defendants as a minor, had little education, and was paid fifty dollars or less per week over the course of fifteen years.

49.     As a direct and proximate result of Defendants' use of and threats of physical restraint, as well as Defendants' use of economic coercion and threats of debt collection, Plaintiff performed work for Defendants against her will from approximately 1991 to 2005.

50.     As a direct and proximate result of Defendants' conduct in forcing Plaintiff to perform work against her will, Plaintiff suffers from severe emotional distress, including anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, and anguish.

//

18

PLAINTIFF CLAIRE HEADLEY'S THIRD AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

F:\WP\Cases\8526\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

51.     Defendants' conduct in forcing Plaintiff to perform work against her will was a substantial factor in causing Plaintiff's severe emotional distress.

52.     Plaintiff seeks damages for her emotional distress in a sum to be established according to proof.

## FOURTH CAUSE OF ACTION

### FOR FORCED LABOR (HUMAN TRAFFICKING)

(By Plaintiff, Claire Headley,

Against All Named Defendants and Does 1-10)

53.     Plaintiff refers to paragraphs 1 through 52 and, by this reference, incorporates said paragraphs hereat as though set forth in full.

54.     From approximately 1991 to 2005, Defendants obtained labor and services from Plaintiff (a) by threats of serious harm to, and physical restraint against, Plaintiff and Plaintiff's coworkers; (b) by means of a scheme, plan, and pattern of conduct intended to cause Plaintiff to believe that, if Plaintiff did not perform such labor or services, that Plaintiff, her coworkers, and Plaintiff's family would suffer serious harm or physical restraint; and (c) by means of threatened abuse of law and the legal process.  These acts are demonstrated by, but not limited to, the following:

(A)     Plaintiff was restricted almost entirely to Defendants' facilities.  If Plaintiff wanted to leave Defendants' facilities for any reason whatsoever, she was required to submit a formal request and obtain written authorization from at least three different people before she was allowed to leave.  Additionally, if Plaintiff wanted to leave Defendants' facilities for more than a few hours, she was required to undergo a security check, also known as a "sec check."  During sec checks, Plaintiff was interrogated by Defendants and questioned at length about her intentions for leaving and her plans while away from Defendants' facilities.  Plaintiff observed that many of her co-workers only were allowed to leave Defendants' facilities with security "escorts" when these individuals were "perceived" to be security risks (i.e., individuals

19

TELEPHONE (562) 437-6499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) TOX-1661
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\8528\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

who may never come back or who may speak negatively of their experiences). Over the course of her fifteen years of work for Defendants, Plaintiff almost never was allowed to leave Defendants' facilities for any reason.

(B)     Defendants' property in Gilman Hot Springs, California, where Plaintiff spent the bulk of her time working for Defendants, was encircled with a razor-wire topped fence that had sharp inward pointing spikes to prevent escape, was equipped with motion sensors throughout the property, and had other surveillance posts around the perimeter. The gates at this property were guarded at all times, preventing Plaintiff and her coworkers from freely coming and going. Security also was present at Plaintiff's living quarters, further preventing Plaintiff and her coworkers from freely coming and going. Plaintiff and her coworkers also were required to check-in for "musters" several times a day, during which Defendants accounted for their presence.

(C)     Plaintiff's important personal documents were kept under lock and key by Defendants and Plaintiff was not allowed to keep these documents on her person or at her living quarters. This included Plaintiff's birth certificate, passport, and her marriage certificate.

(D)     Plaintiff observed that others who attempted to permanently leave Defendants' facilities were tracked down and brought back to Defendants' facilities. Defendants used "blow drills" to locate escaped workers, whereby a significant number of individuals were assigned to track down escaped workers through various methods, including physically following and searching for escaped workers, tracking the workers' calls to relatives, and tracking phone records and bank and credit accounts. Plaintiff also was aware that many of the workers who attempted to escape Defendants' facilities were physically restrained and assaulted. Once escaped workers were located and returned to Defendants' property, these workers were placed under lock and key with full-time security for lengthy periods of time, required to perform heavy manual labor, interrogated, and stripped of other basic rights.

//

20

PLAINTIFF CLAIRE HEADLEY'S THIRD AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\9528\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

(E)     Defendants also routinely threatened Plaintiff and her coworkers with being sent to the Rehabilitation Project Force ("RPF"). Workers assigned to the RPF are subjected to a brutal regimen of manual labor and have no freedom of movement. Working conditions on the RPF are so horrible that its mere existence serves as a deterrent and intimidates workers, such as Plaintiff, into a state of fear and compliance vis-à-vis to Defendants. The RPF can be arguably more severe in punishment and violations of personal liberties than solitary confinement in prison.

(F)     Defendants also severely restricted Plaintiff's lines of communication to the outside world. Plaintiff had no access to the internet, email, or uncensored mail. Likewise, to make a personal phone call, Plaintiff was required to have written authorization from at least two different people and had to specify who she wanted to call and why. Her phone calls then were monitored. As a result, Plaintiff was prevented from phoning or emailing for help.

(G)     Plaintiff and her coworkers also were forbidden from calling 911 as Defendants deemed calling 911 to be a "high" crime. Plaintiff feared that if she called 911, she would lose any and all contact with her family, would be placed on heavy manual labor, would be ostracized from others on Defendants' property, would have no access to phone lines for a year or more, and would not be allowed to leave Defendants' property without a full-time security escort. Additionally, based on Defendants' representations regarding their security system, Plaintiff did not believe that the police would get past the security gate at Defendants' property even if she called 911.

(H)     Plaintiff also was forbidden from informing her family where Defendants' facilities in Gilman Hot Springs, California, were located. The location of these facilities were intentionally kept a secret from public Scientologists for years.

(I)     Defendants required Plaintiff to submit to interrogations on a primitive lie detector type device called an "e-meter." These interrogations were used to gather and document confidential and embarrassing information, and to wear

21

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\952SPLEA\DOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

Plaintiff's resistance down by hours of repetitive and intrusive questioning.  Plaintiff was subjected to interrogations on numerous occasions during her employment with Defendants.

(J)     Throughout Plaintiff's fifteen years of work, Defendants intimidated Plaintiff with the constant threat of hard labor, sleep deprivation, confinement, physical restraint, lack of food, isolation from her husband, and being permanently "disconnected" from her family and friends if Plaintiff failed to comply with Defendants' work orders.  Indeed, on numerous occasions when Plaintiff purportedly failed to meet Defendants' standards, she actually was subjected to heavy labor, deprived of her sleep, prevented from returning to her living quarters, isolated from her husband, and subjected to food deprivation.

(K)     Defendants also engaged in acts of economic coercion and threats of debt collection.  Specifically, Defendants routinely reminded Plaintiff and her coworkers that Defendants charge a "Freeloader Debt" to employees who "breach" their purported employment contract by quitting their jobs and leaving Defendants' facilities.  Defendants threatened employees, including Plaintiff, with substantial sums of money, frequently in the $100,000 range, if they did not continue performing work for Defendants.  Indeed, at the conclusion of Plaintiff's employment with Defendants, the Scientology enterprise asserted a "Freeloader Debt" against Plaintiff in the amount of $96,580.00.  This threat was significant and extremely intimidating to Plaintiff who began working for Defendants as a minor, had little education, and was paid fifty dollars or less per week over the course of fifteen years.

55.     Plaintiff reasonably believed that Defendants would act on their threats and that Plaintiff, her coworkers, and her family members would be subjected to serious harm.  This is particularly so because Plaintiff actually was subjected to heavy manual labor, deprived of her sleep, restricted to Defendants' property, isolated from her husband, and subjected to food deprivation. Moreover, Plaintiff observed and was aware that Defendants physically assaulted and restrained coworkers who did not

22

F:\WP\Cases\6528\PLEADDOC\COMPLAINT\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4956

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

comply with Defendants' orders.

56.     Defendants' threats and pattern of conduct were sufficiently serious such that they reasonably would cause a person of Plaintiff's background under the same circumstances to perform and continue performing labor and services to avoid incurring the threatened harm.

57.     As a direct and proximate result of Defendants' threats and pattern of conduct, Plaintiff performed labor and services for Defendants against her will and out of fear that she would suffer serious harm, from approximately 1991 to 2005.

58.     As a direct and proximate result of Defendants' conduct in forcing Plaintiff to perform work against her will, Plaintiff suffers from severe emotional distress, including anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, and anguish, as well as other damages.

59.     Defendants' threats and pattern of conduct in forcing Plaintiff to perform work against her will were substantial factors in causing Plaintiff's severe emotional distress and other damage to Plaintiff.

60.     Plaintiff seeks damages for her emotional distress and other damages in accordance with proof at trial and to the full extent authorized by law.

## FIFTH CAUSE OF ACTION

FOR VIOLATION OF BUSINESS AND PROFESSIONS CODE

SECTION 17200, ET SEQ.

(By Plaintiff, Claire Headley,

Against All Named Defendants and Does 1-10)

61.     Plaintiff refers to paragraphs 1 through 60 and, by this reference, incorporates said paragraphs hereat as though set forth in full.

62.     During Plaintiff's employment with Defendants from approximately 1991 to 2005, and upon Plaintiff's termination of her employment with Defendants, Defendants engaged in unlawful, unfair and fraudulent business practices.

23

F:\WP\Cases\9526\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

63. Defendants' unlawful, unfair, and fraudulent business practices include:

(A) Defendants' internal policy of coercing and forcing their female employees, including Plaintiff, to have abortions, so as to maximize the workload from female employees and to avoid child care issues. These actions violated of Plaintiff's inalienable rights guaranteed by Article 1, Section 1 of the California Constitution, including Plaintiff's rights to privacy and to make her own free choice on having children.

(B) Defendants' repeated confinement of their employees, including Plaintiff, to the their property by means of threats, intimidation, and coercion.

(C) Defendants' practice of threatening to disclose embarrassing and confidential information about their employees, including Plaintiff, when Defendants detect their employees want to leave their facilities or fail to comply with Defendants' policies or orders.

(D) Defendants' use of economic coercion and threats of debt collection to control, coerce and intimidate employees such as Plaintiff. Defendants remind employees that Defendants will charge a "Freeloader Debt" should employees "breach" the purported employment contract, knowing that these purported debts are invalid and unenforceable. The threat of debt collections is used to intimidate and coerce employees into continuation of working under unlawful conditions. At the conclusion of Plaintiff's employment with Defendants, Scientology asserted a "Freeloader Debt" against Plaintiff in the amount of $96,580.00. Plaintiff had worked hard for years for fifteen years earning an average of fifty dollars per week or less and supposedly owed her employer $96,580.00.

(E) Defendants' solicitation of employees, including Plaintiff, through false representations regarding the workers' access to their parents, their schedule, and the education that they will receive as employees when working and living at Defendants' facilities.

24

F:\WP\Cases\9526\PLEAD\DOC\COMPLAINT\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

(F)    Defendants' practice of coercing employees, including Plaintiff, into signing documents that purport to release all claims against Defendants, prevent employees from saying anything negative about Defendants, and  purport to subject employees to significant penalties/fines if said agreements are not adhered to in full.

(G)    Defendants' practice of depriving minors, including Plaintiff, of required education.

(H)    Defendants' practice of refusing employees, including Plaintiff, access to their files.

(I)    Requiring that employees submit to interrogation on a primitive lie detector type device called an e-meter in violation of state and federal laws prohibiting mandatory use of lie detectors or similar devices in interrogations and examinations as a condition of continued employment.

(J)    Engaging in human trafficking and forced labor in violation of state, federal and common law.

64.    Plaintiff further is informed and believes and thereon alleges that one or more Defendants has committed the following unlawful and unfair practices:

(A)    Retaliation against Plaintiff's family business and others for pursuing labor claims, which is a violation of Labor Code Sections 1102.5 and 98.6, and intimidation of potential witnesses.  Defendants have interfered with Plaintiff's business by threatening employees of said business with subpoenas that will allegedly tie them up in court and depositions for many days without pay.  Defendants also have offered to forgive alleged debts for services rendered in return for what are essentially agreements not to testify or support labor claims being made against Defendants CSI and RTC.

65.    As a direct and proximate result of Defendants' unlawful, unfair and fraudulent business practices, as detailed above, Plaintiff suffered injuries in fact as a result of Defendants' invasions of privacy, deprivation of her liberties, forced labor, and

25

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXCTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\9526\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

other threatening and intimidating conduct, such that Plaintiff has standing to pursue a claim for injunctive relief.

66.     Plaintiff seeks an injunction against Defendants' unlawful, unfair and fraudulent business practices pursuant to Business and Professions Code Sections 17200, et seq., especially Business and Professions Code Section 17203.

67.     Plaintiff further seeks reasonable attorney's fees according to proof pursuant to California Code of Civil Procedure Section 1021.5. This claim is made for the public good and to discourage this outrageous conduct from continuing in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.     For general damages in a sum in excess of the minimum jurisdictional amount of the court;

2.     For emotional distress damages according to proof;

3.     For injunctive relief preventing forced abortions, deprivation of liberty, and unfair and fraudulent business practices;

4.     For reasonable attorney's fees pursuant to C.C.P. § 1021.5 and 18 U.S.C. §§ 1589, 1593, and 1595;

5.     For pre- and post-judgment interest allowed by law;

6.     For punitive damages according to proof;

7.     For Plaintiff's costs of suit incurred herein; and

8.     For such other and further relief as the Court deems just and proper.

DATE: May 28, 2010                METZGER LAW GROUP
                                  A Professional Law Corporation

                                  /s/

                                  RAPHAEL METZGER, ESQ.
                                  Attorneys for Plaintiff,
                                  CLAIRE HEADLEY

26

PLAINTIFF CLAIRE HEADLEY'S THIRD AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 436-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

F:\WP\Cases\9528\PLEADDOC\COMPLAIN\Plaintiff Claire Headley - Third Amended Complaint (REVISED).wpd

TELEPHONE (562) 437-4499
TOLL-FREE (877) TOX-TORT
TELECOPIER (562) 439-1561
WWW.TOXICTORTS.COM

LAW OFFICES OF
RAPHAEL METZGER
A PROFESSIONAL LAW CORPORATION
401 EAST OCEAN BOULEVARD, SUITE 800
LONG BEACH, CALIFORNIA 90802-4966

PRACTICE CONCENTRATED IN TOXIC
TORT & ENVIRONMENTAL LITIGATION
OCCUPATIONAL & ENVIRONMENTAL LUNG
DISEASE, CANCER, AND TOXIC INJURIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Pursuant to California Code of Civil Procedure Section 600, et seq.,  and Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues which may be tried to a jury.

DATE: May 28, 2010

METZGER LAW GROUP
A Professional Law Corporation

/s/

RAPHAEL METZGER, ESQ.
Attorneys for Plaintiff,
CLAIRE HEADLEY

27